# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, on behalf of itself and all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | DEMAND FOR JURY TRIAL |
| INSPIRE MEDICAL SYSTEMS, INC., TIMOTHY P. HERBERT, and RICHARD J. BUCHHOLZ, | |
| Defendants. | |

Plaintiff the City of Hollywood Firefighters' Pension Fund ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Inspire Medical Systems, Inc. ("Inspire Medical" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Inspire Medical's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons or entities who purchased Inspire Medical's common stock between May 3, 2023 and November 7, 2023, inclusive (the "Class Period") against Inspire Medical and certain of its officers (collectively "Defendants") seeking to pursue remedies under the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a, 78j(b), and 78t(a) (the "Exchange Act").

2.      Inspire Medical is a medical technology company that develops and commercializes minimally invasive products for patients with obstructive sleep apnea ("OSA"). The Company offers the only OSA device that has been approved by the Food and Drug Administration ("FDA") for treatment of the root cause of sleep apnea by

1

working inside the body with the patient's natural breathing process.  The Company calls the treatment, which includes an implantable device, "Inspire therapy."

3.     For patients to receive insurance coverage for Inspire therapy, they are required to visit a doctor to secure prior authorization.  The Company maintains an Advisor Care Program team to assist with this process, including the scheduling of appointments, which was historically handled through telephone calls with physician offices.  As Inspire Medical's Chief Executive Officer ("CEO"), Timothy P. Herbert ("Herbert"), explained months before the Class Period, during a January 9, 2023 JPMorgan Conference, the Company's "biggest challenge" in generating revenue was patients getting an appointment with a doctor to be evaluated and receive prior authorization.

4.     In response to this challenge, prior to the start of the Class Period, in 2022, Inspire Medical introduced a pilot program (the "Acceleration Program").  Through the Acceleration Program, the Company's Advisor Care Program team, with the customer on the phone, would directly access doctors' electronic schedules and schedule doctor appointments online, without the need for phone calls.  The Acceleration Program was designed to facilitate customers' receiving prior authorizations from doctors, and in turn, increase demand for the Company's Inspire therapy. Indeed, Defendants touted the Acceleration Program's effectiveness, claiming that it enabled the Company's Advisor Care Program team members to "log directly into" doctors' schedules "right now."

5.     The Class Period begins on May 3, 2023.  After markets closed the prior day, May 2, 2023, Defendants made highly specific statements as to the current effectiveness

of the Acceleration Program, crowing to investors that the program had achieved a "30% improvement in physician appointments."

6. Defendants continued to tout the Acceleration Program during the Company's next quarterly earnings call on August 2, 2023, telling investors that "about 60-plus centers are using the tool right now."

7. However, unbeknownst to investors, when these statements were made, Inspire Medical was already tracking problems with the Acceleration Program, including a decrease in the number of prior authorization submissions for Inspire therapy. As a result, Defendants' statements during the Class Period about the Acceleration Program, and the Company's associated financial guidance, business, operations, and prospects, were materially false and/or misleading.

8. Investors only learned the truth after the close of markets on November 7, 2023, when the Company announced disappointing earnings results for the third quarter of 2023—its first reported revenue miss since becoming a public company in 2018. The press release quoted CEO Herbert stating that:

> in tracking the results of the [Acceleration Program], we observed a decline in prior authorization submissions for patients seeking Inspire therapy. After recognizing this trend, we reinvigorated our efforts to facilitate patient access to Inspire therapy by more closely engaging with our customers with the prior authorization submission process . . . to assure consistency and accuracy of submissions.

9. In a stunning admission, Inspire Medical stated it had started to "track" problems with the Acceleration Program in the second quarter of 2023, including a decrease in the number of prior authorization submissions for Inspire therapy, and

"recogniz[ed] this trend early in the third quarter"—*i.e.*, as early as July 1, 2023.  Indeed, CEO Herbert further explained that prior to the Company's second quarter 2023 earnings call on August 2, 2023, "we had strong confirmation" of the problems with the Acceleration Program, and "we realized we needed to take some corrective action."

10.     On this news, Inspire Medical's stock price fell $31.79 per share, or nearly 20%, from a closing price of $161.74 per share on November 7, 2023, to a closing price of $129.65 per share on November 8, 2023.

11.     Analysts at JPMorgan reported that the "main driver of the softness stemmed from a pilot program regarding prior authorization submissions," which "resulted in a $7-10 [million] shortfall."  Similarly, analysts at Piper Sandler noted that the "miss was largely due to sub-optimal reception/implementation of [Inspire Medical]'s pilot program."

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of

the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Inspire Medical is headquartered in this Judicial District.

16.   In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.   Plaintiff is a public pension fund based in Hollywood, Florida that provides benefits for eligible firefighters and their beneficiaries in Hollywood, Florida.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Inspire Medical common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

18.   Defendant Inspire Medical is incorporated under the laws of Delaware, with its principal executive offices located in Golden Valley, Minnesota.  The Company's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "INSP."

19.   Defendant Herbert is the founder of Inspire Medical and has served as the Company's CEO, President, and Director since 2007.

20.     Defendant Richard J. Buchholz ("Buchholz") has served as the Company's Chief Financial Officer ("CFO") since 2014.

21.     Defendants Herbert and Buchholz (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, shareholder letters, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

22.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Inspire Medical, founded in 2007 and based in Golden Valley, Minnesota, is a medical technology company that develops and commercializes minimally invasive products to treat patients with OSA.  The Company's Inspire therapy is the only FDA-approved OSA device that treats the root cause of sleep apnea by working inside the body

with the patient's natural breathing process.  The device is implanted into a patient's chest where it acts as a "closed-loop solution that continuously monitors a patient's breathing and delivers mild hypoglossal nerve stimulation to maintain an open airway."

24.     Prior to the Company introducing the Acceleration Program, patients called into the Company's Advisor Care Program, and together, the patient and an Advisor Care Program representative would make a conference call to a doctor's office in order to schedule an appointment with an Inspire-certified doctor so that the patient could obtain prior authorization and insurance coverage for implanting the Company's OSA device. During the January 9, 2023 JPMorgan Healthcare Conference, CEO Herbert described the previous process as a "buzz kill" and the "biggest challenge" facing the Company.

25.     In order to overcome the "biggest challenge" facing the Company, in 2022, Inspire Medical launched the Acceleration Program to allow the Company's Advisor Care Members to directly access doctors' electronic schedules on behalf of patients.  In the words of CEO Herbert, the Company's Advisor Care Program's team members would now be able to "just slot them in on an available appointment on the website."

26.     During the Company's fourth quarter of 2022 earnings call on February 7, 2023, CEO Herbert explained that the Acceleration Program provided the Company's Advisor Care Program team members with the ability "to log directly into the scheduling at the physician's office [so] they can directly schedule there" and was meant to "improve the efficiency of the Advisor Care Program."

### Defendants' Materially False and Misleading Statements
### Issued During the Class Period

27.     After the markets closed on May 2, 2023, Inspire Medical issued a press release announcing its financial results for the first quarter of 2023.  The press release reported that Inspire Medical had generated revenue of $127.9 million in the first quarter, an 84% increase over the same quarter last year.  Additionally, the press release highlighted that due to "positive trends during the first quarter," the Company had increased its full year 2023 revenue guidance to a range of $580 million to $590 million (from $560 million to $570 million)—representing growth of 42% to 45% over full year 2022 revenue of $407.9 million.

28.     During the related earnings conference call with investors held after the markets closed on May 2, 2023, CEO Herbert stated that Inspire Medical's "digital scheduling pilot continues to make strides and we are currently experiencing a 30% improvement in physician appointments in the pilot centers compared to traditional phone and e-mail scheduling through our Advisor Care Program and are adding technology to support the next wave of participating centers."

29.     On May 16, 2023, Inspire Medical participated in the RBC Capital Markets Global Healthcare Conference.  When asked to provide "any color on quarter to date trends," CFO Buchholz again spoke positively about the Acceleration Program, stating that "we are optimistic.  We are scheduling cases throughout the second quarter, obviously, and now into the third quarter.  We're trying to reduce that, that timeframe of getting potential patients to receive our therapy . . . .  We're excited about trying to increase our utilization."

30.     On August 1, 2023, after the close of markets, Inspire Medical issued a press release announcing its financial results for the second quarter of 2023.  The press release noted that the Company had generated revenue of $151.1 million in the second quarter of 2023, a 65% increase over the same quarter last year.  The press release quoted CEO Herbert as stating that, "[b]ased on our strong first-half results, we are raising our full year 2023 revenue guidance to between $600 million to $610 million, an increase from our prior guidance of $580 million to $590 million."

31.     On the accompanying earnings conference call later that day, CEO Herbert highlighted the successes of the Company's Acceleration Program, noting that "about 60-plus centers are using the tool right now.  And that's really exciting because it's good for the patients.  They don't go through the poor experience of getting voice mail at a center when we're trying to make those appointments.  So we're going to continue to push that. We're entering the second phase of that, where we can add additional centers, partnering with our software company to interface into their digital scheduling."

32.     The above statements identified in ¶¶ 27-31 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants failed to disclose to investors that: (1) despite the Acceleration Program, customers were encountering challenges with the prior authorization submission process, including with the scheduling of appointments; (2) a slowdown in prior authorization submissions arising from these challenges led to a shortfall of hundreds of procedures to implant the

Company's OSA device; (3) as a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Comes to Light**

33.  On November 7, 2023, after the markets closed, Inspire Medical issued a press release with its results for the third quarter of 2023.  The press release quoted CEO Herbert revealing that:

> Early in the year, we implemented a pilot program regarding prior authorization submissions by our customers, and in tracking the results of the program, we observed a decline in prior authorization submissions for patients seeking Inspire therapy.  After recognizing this trend, we reinvigorated our efforts to facilitate patient access to Inspire therapy by more closely engaging with our customers with the prior authorization submission process, including involving our corporate prior authorization team to assure consistency and accuracy of submissions.

34.  During the accompanying earnings conference call, CEO Herbert explained that the Company "tracked the decrease in the number of submissions by our customers seeking prior authorization to the Inspire procedure, resulting in a short-term impact on the number of Implant procedures during the early part of the third quarter."  Addressing the Acceleration Program, CEO Herbert stated, "[d]espite a careful and well-planned approach to the pilot program, a significant number of our customers experienced challenges with their prior authorization submission process."

35.  Later on the call, an analyst at JPMorgan commented, "you started to learn about this early in the third quarter [and] I imagine it probably overlapped with the second quarter call," before bluntly asking, "just wondering when you knew about it and why not

mention on 2Q?"  In response, CEO Herbert acknowledged that during "the second quarter" the Company was "being educated with new centers and that's when we're able to start to track that a little closer."  CEO Herbert then admitted that in "the beginning of the third quarter [] we realized we needed to take some corrective action and we implemented that change," adding that "it started to become evident maybe a little bit in the second quarter, but with tracking of the data, we really didn't take the action until early in the third quarter when we had strong confirmation on that."

36.    Analysts reacted strongly to the earnings miss, as analysts at JPMorgan reported that the "main driver of the softness stemmed from a pilot program regarding prior authorization submissions . . . that didn't go smoothly, and some procedures were lost," "result[ing] in a $7-10M shortfall."  Similarly, Lake Street Capital analysts explained that revenue "came up short of expectations due to a decrease in prior authorizations impacting patient volumes in the first part of Q3," while Oppenheimer analysts noted that the "[d]ecrease in the number of prior[]authorizations [was] due to process challenges." Additionally, analysts at Piper Sandler described the Company's results as "a disappointing print," and "self-inflicted," attributing the "miss . . . largely . . . to sub-optimal reception/ implementation of INSP's pilot program, which intended to autonomize prior authorization processes at high volume centers."  The analysts highlighted that "a number of centers faced difficulties in the transition and the subsequent decline in prior authorization submissions led to a slowdown in INSP procedures in early Q3."

37.     On these revelations, the price of Inspire Medical's shares dropped $31.79 per share, or more than 19.6%, from a closing price of $161.74 per share on November 7, 2023, down to a closing price of $129.95 per share on November 8, 2023.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Inspire Medical common stock between May 3, 2023 and November 7, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, common stock of Inspire Medical actively traded on the NYSE (an open and efficient market) under the ticker symbol "INSP." Millions of Inspire Medical shares were traded publicly during the Class Period on the NYSE. As of October 31, 2023, Inspire Medical had more than 29.5 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Inspire Medical or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b.     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c.     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, and prospects of Inspire Medical;

d.     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Inspire Medical;

e.      whether the market price of Inspire Medical common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

44.    The market for Inspire Medical common stock was an open, well-developed, and efficient market at all relevant times.   As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, the Company's common stock traded at artificially inflated prices during the Class Period.   Plaintiff and the other members of the Class purchased the Company's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Inspire Medical and have been damaged thereby.

45.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make

Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about the Company's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

47.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Inspire Medical, their control over, receipt, and/or modification of the Company's allegedly materially misleading statements and

omissions, and/or their positions with the Company that made them privy to confidential information concerning Inspire Medical, participated in the fraudulent scheme alleged herein.

### INAPPLICABILITY OF STATUTORY SAFE HARBOR

48.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements plead in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Inspire Medical who knew that the statement was false when made.

### LOSS CAUSATION

50.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

51. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of the Company's common stock and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of the Company's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

52. The market for Inspire Medical common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Inspire Medical common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Inspire Medical common stock and market information relating to Inspire Medical and have been damaged thereby.

53. At all times relevant, the market for Inspire Medical common stock was an efficient market for the following reasons, among others:

a. Inspire Medical was listed and actively traded on the NYSE, a highly efficient and automated market;

b. As a regulated issuer, Inspire Medical filed periodic public reports with the SEC and/or the NYSE;

c.      Inspire Medical regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.      Inspire Medical was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

54.      As a result of the foregoing, the market for Inspire Medical common stock promptly digested current information regarding Inspire Medical from all publicly available sources and reflected such information in the Company's stock price.  Under these circumstances, all purchasers of Inspire Medical common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

55.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.  All that is

necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

56.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Inspire Medical common stock; and (iii) cause Plaintiff and other members of the Class to purchase Inspire Medical common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.    Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Inspire Medical common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated

thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Inspire Medical and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

60.     Each of the Individual Defendants' primary liability and controlling-person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting

of the Company's business, operations, and prospects; (iii) each of the Individual

Defendants enjoyed significant personal contact and familiarity with the other Defendants

and was advised of and had access to, other members of the Company's management team,

internal reports, and other data and information about the Company's financial condition

and performance at all relevant times; and (iv) each of the Individual Defendants was aware

of the Company's dissemination of information to the investing public, which they knew

and/or recklessly disregarded was materially false and misleading.

61.     Defendants had actual knowledge of the misrepresentations and/or omissions

of material facts set forth herein or acted with reckless disregard for the truth in that they

failed to ascertain and to disclose such facts, even though such facts were available to them.

Such Defendants' material misrepresentations and/or omissions were done knowingly or

recklessly and for the purpose and effect of concealing the Company's operating condition,

business practices, and prospects from the investing public and supporting the artificially

inflated and/or maintained price of its common stock.  As demonstrated by Defendants'

overstatements and misstatements of the Company's business, operations, and prospects

throughout the Class Period, Defendants, if they did not have actual knowledge of the

misrepresentations and/or omissions alleged, were reckless in failing to obtain such

knowledge by deliberately refraining from taking those steps necessary to discover whether

those statements were false or misleading.

62.     As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of

Inspire Medical common stock was artificially inflated, and relying directly or indirectly

on the false and misleading statements made by Defendants or upon the integrity of the market in which the shares and stock traded or trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class purchased Inspire Medical common stock during the Class Period at artificially inflated prices and were damaged thereby.

63.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff, the other members of the Class, and the marketplace known of the truth regarding the problems that Inspire Medical was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased Inspire Medical common stock, or, if they had purchased such shares or stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

64.     By virtue of the foregoing, Inspire Medical and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Inspire Medical within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Inspire Medical and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages

in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

70.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

71.     Plaintiff demands a trial by jury.

Dated: December 22, 2023                    Respectfully submitted,

                                            **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

                                            */s/ Gregg M. Fishbein*
                                            Gregg M. Fishbein (Bar No. 0202009)
                                            Kate Baxter-Kauf (Bar No. 392037)
                                            100 Washington Avenue S, Suite 2200
                                            Minneapolis MN 55401
                                            Tel.: (612) 596-4007
                                            Fax: (612) 339-0981
                                            gmfishbein@locklaw.com

kmbaxter-kauf@locklaw.com

*Local Counsel for Plaintiff the City of
Hollywood Firefighters' Pension Fund*

**SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice forthcoming*)
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

*-and-*

Marco A. Dueñas (*pro hac vice forthcoming*)
10 Bank Street, Suite 882
White Plains, New York 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Plaintiff the City of Hollywood
Firefighters' Pension Fund*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**
Robert D. Klausner
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Plaintiff the City of
Hollywood Firefighters' Pension Fund*