# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CITY OF HOLLYWOOD
FIREFIGHTERS' PENSION FUND,
individually and on behalf of those
similarly situated,

        Plaintiff,

vs.

INSPIRE MEDICAL SYSTEMS, INC.;
TIMOTHY P. HERBERT; and
RICHARD J. BUCHHOLZ,

        Defendants.

File No. 0:23-cv-03884-NEB-DJF

**DEFENDANTS' REPLY IN
SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................................................i

INTRODUCTION ..............................................................................................................1

ARGUMENT .......................................................................................................................2

I.      Plaintiff Fails To Plausibly Allege "False or Misleading" Statements. .................2

        A.      Herbert's May 2 and May 16 Statements Were Not False or Misleading. .....................................................................................................3

              i.      The fraud-by-hindsight doctrine bars claims based on the May statements. ...............................................................................3

              ii.     Regardless, Plaintiff fails to point to any actionable misrepresentation in the statements themselves. .............................8

                     1.     The one statement that addresses the PA Pilot is nonactionable puffery. ...............................................................9

                     2.     The other May statements do not address the PA Pilot and are factually accurate in any event. ......................10

                          a.     May 2: *"See[ing] signs of improvement"* in *"reducing the"* *"approximately six month[]"* *"time from patient contact to implant."* ..........................10

                          b.     May 2: *"Improv[ing] . . . conversion of contact to patients receiving therapy."* ...............................12

                          c.     May 2: *"Digital scheduling pilot"* led to a *"30% improvement in physician appointments . . ."*......12

                          d.     May 16: *"Now we get approved in just 2 to 5 days…"* .............................................................12

        B.      Because the August 1 and September 6 Statements Do Not Address the PA Pilot and Are Factually Accurate, They Are Not Actionable Either. ...............................................................................13

               i.      August 1: *"Improv[ing] . . . conversion of contact to patients receiving therapy."* ...............................14

               ii.     August 1: *"I think we're seeing continued growth across all of our centers."* ...............................................................14

               iii.    September 6: *"We have a robust pipeline of patients awaiting therapy."* ...............................................................15

II.     Plaintiff's Minimal Scienter Arguments Are Unpersuasive. ................................. 16

     A.     Herbert Never "Admitted" To Making Contradictory Statements. ....... 16

     B.     The FE Allegations Do Not Speak to Defendants' State of Mind. ........ 18

     C.     The Analyst Reports Support Defendants, Not Plaintiff. ........................ 19

     D.     The "Core Operations" Doctrine Is Inapplicable and Insufficient. ........ 19

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*In re Acadia Pharms., Inc., Sec. Litig.,*
2020 WL 2838686 (S.D. Cal. June 1, 2020) ....................................................18

*In re Allergan PLC Sec. Litig.,*
2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) ................................................12

*In re Apogee Enter., Inc. Sec. Litig.,*
2020 WL 1445856 (D. Minn. Mar. 25, 2020) ............................................. 4, 18

*In re AppHarvest Sec. Litig.,*
684 F. Supp. 3d 201 (S.D.N.Y. 2023) ..............................................................6

*Azar v. Yelp, Inc.,*
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ........................................... 4, 10

*In re Bear Stearns Co., Inc. Sec. Litig.,*
763 F. Supp. 2d 423 (S.D.N.Y. 2011) ...............................................................8

*Beaver Cty. Emp. Ret. Fund v. Tile Shop Holdings, Inc.,*
94 F. Supp. 3d 1035 (D. Minn. 2015) ..............................................................19

*In re CenturyLink Sales Practices & Sec. Litig.,*
403 F. Supp. 3d 712 (D. Minn. 2019) ....................................................... 18, 21

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.,*
270 F.3d 645 (8th Cir. 2001) ...........................................................................17

*IBT Employer Grp. Welfare Fund v. Compass Minerals Int'l, Inc.,*
706 F. Supp. 3d 1225 (D. Kan. 2023) .............................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, LP,*
601 U.S. 257 (2024) .........................................................................................18

*Mart v. Tactile Sys. Tech., Inc.,*
595 F. Supp. 3d 788 (D. Minn. 2022) .............................................................21

*Matrixx Initiatives, Inc. v. Siracusano,*
563 U.S. 27 (2011) ...........................................................................................14

*In re MF Global Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)....................................................................16

*In re Navient Corp. Sec. Litig.*,
    2019 WL 7288881 (D.N.J. Dec. 30, 2019)..............................................................7

*In re Nielsen Holdings PLC Sec. Litig.*,
    510 F. Supp. 3d 217 (S.D.N.Y. 2021)................................................................ 8, 18

*Public Pension Grp. v. KV Pharm. Co.*,
    679 F.3d 972 (8th Cir. 2012).................................................................................8

*In re Resideo Techs., Inc., Sec. Litig.*,
    2021 WL 1195740 (D. Minn. Mar. 30, 2021)...........................................................7

*Sanchez v. Centene Corp.*,
    407 F. Supp. 3d 831 (E.D. Mo. 2019) ............................................................. 4, 10

*SEC v. Ustian*,
    229 F. Supp. 3d 739 (N.D. Ill. 2017) .....................................................................2

*Sinnathurai v. Novavax, Inc.*,
    645 F. Supp. 3d 495 (D. Md. 2022) .....................................................................21

*In re St. Jude Med., Inc. Sec. Litig.*,
    836 F. Supp. 2d 878 (D. Minn. 2011)...................................................................15

*In re Stratasys Ltd., Sec. Litig.*,
    864 F.3d 879 (8th Cir. 2017) ................................................................................3

*In re Stratasys, Ltd.*,
    2016 WL 3636992 (D. Minn. June 30, 2016) ................................................*passim*

*Trustees of Welfare & Pension Funds of Local 464A v. Medtronic PLC*,
    2024 WL 1332262 (D. Minn. Mar. 28, 2024) ................................................... 6, 14

*West Palm Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ...................................................................15

## Statutes, Rules & Regulations

15 U.S.C. § 78u-4(b)(1)(B)...........................................................................................4

## **INTRODUCTION**[1]

The Opposition confirms that this suit is a classic case of fraud by hindsight. For 64 pages, Plaintiff insists that because Inspire admitted on its Q3 2023 earnings call that the PA Pilot impacted Inspire's business in Q3, that *must* mean that Defendants made a "false or materially misleading" statement about the Pilot sometime before that call, and that the full impact of any issues known only by the end of Q3 must have been equally obvious months earlier.[2] But Plaintiff offers no facts supporting either conclusion. For three reasons, the Court should dismiss the Complaint.

First, Plaintiff is off as to timing. Most of the statements Plaintiff challenges were made in May 2023, but Defendants did not obtain confirmation of problems with the PA Pilot until Q3 2023. The May statements could not have been misleading for failure to disclose problems only confirmed later.

Second, the few statements that occurred after problems became apparent addressed other subjects entirely and therefore could not have misled investors about the PA Pilot either.

---

[1] Inspire refers to its opening brief (Dkt. 40) as "Opening.Br." and Plaintiff's opposition (Dkt. 46) as "Opp.Br." Defined terms are given the same meaning as used in Inspire's opening brief. All emphasis is added unless otherwise stated.

[2] Contrary to Plaintiff's insinuations (Opp.Br.17 n.3), there is nothing improper about use of the term "PA Pilot." It is Plaintiff's own term (¶¶62-63), and Herbert used it on the November 7 earnings call at the heart of Plaintiff's case. (Exs.13-14.)

1

Finally, Plaintiff's scienter allegations are unpersuasive. Plaintiff concedes that Defendants gained nothing financially from the alleged "cover-up," and so had no motive to lie. And Plaintiff's other purported evidence of scienter—vague allegations by low-level former employees ("FEs") and cherry-picked analyst reports—do not come close to demonstrating the "cogent and compelling" inference of scienter the PLSRA requires.

## **ARGUMENT**

### I.      **Plaintiff Fails To Plausibly Allege "False or Misleading" Statements.**

As an initial matter, Plaintiff tacitly concedes that Inspire *did* disclose the PA Pilot, including efforts to "divert time and resources from prior-authorization," before the Class Period began. (Opening.Br.7-8.) While Plaintiff wants the Court to turn a blind eye to these disclosures (Opp.Br.38, nn.10-11), the Court may take judicial notice of the fact that this information was publicly disclosed, including in the March 2023 Truist report. *See SEC v. Ustian*, 229 F. Supp. 3d 739, 761-62 (N.D. Ill. 2017) (courts may consider analyst reports not cited in the complaint as evidence of "what may . . . have been disclosed to the public").

Thus, the question is not whether Inspire failed to disclose the PA Pilot entirely. The question is whether Inspire made any false or materially misleading statements about the Pilot's status or effect during the Class Period. It did not.

### A. Herbert's May 2 and May 16 Statements Were Not False or Misleading.

Almost all of the challenged statements were made by Herbert on either Inspire's May 2, 2023 Q1 earnings call or at a May 16, 2023 RBC Healthcare Conference. (¶¶69-77; Opening.Br.17, 24-28.) None is actionable, for several reasons.

### i. The fraud-by-hindsight doctrine bars claims based on the May statements.

First, a "material misstatement must be false when made, not just in hindsight." *In re Stratasys Ltd., Sec. Litig.*, 864 F.3d 879, 883 (8th Cir. 2017). Because Plaintiff fails to plausibly allege that the PA Pilot was having a materially negative effect on Inspire's business as of May 2 or 16, Herbert had no duty to disclose "problems" with the Pilot on those dates. (Opening.Br.18-21.) Plaintiff's contrary arguments lack merit.

***The November 7 "Admission."*** Plaintiff first suggests that, because Herbert stated on the November 7 call that problems with the PA Pilot "started to become evident *maybe a little bit* in the second quarter," *i.e.*, *sometime* between April 1 and June 30, the Court can *infer* that material PA Pilot problems existed, and Herbert knew about them, in May. (Opp.Br.24, 42-43.) Under the PLSRA, however, vague inferences of fraud are insufficient; "particular[]" facts are required. 15 U.S.C. § 78u-4(b)(1)(B). This "admission" accordingly fails to show that the May statements were false when made. *See In re Apogee Enter., Inc. Sec. Litig.*, 2020 WL 1445856, at *4, 9-10 (D. Minn. Mar. 25, 2020) (rejecting similar argument based on timing mismatch); *see also* Opp.Br.27 n.6 (failing to meaningfully distinguish *Apogee*).

Plaintiff's cited cases confirm the inadequacy of Plaintiff's pleading. (Opp.Br.22.) In each, an executive made an overly rosy statement about an aspect of their company's business but later admitted they were aware of information *directly contradicting* that statement at the *specific* time it was made. In *Sanchez v. Centene Corp.*, for example, an executive told investors in May 2016 that a recent acquisition's "accounting and balance sheet" were "up to snuff." 407 F. Supp. 3d 831, 841 (E.D. Mo. 2019). Just two months later, however, the company admitted that it had misstated the acquisition's "liability reserves by approximately $90 million," and that it had been "working on" resolving that accounting issue "for the past *several months*." *Id.* at 841-42. The court therefore concluded "Defendants had in their possession facts concerning" problems with the acquisition's accounting "that they omitted from their May 2016 statements," which in turn "rendered those statements materially false or misleading." *Id.* at 843. Plaintiff's other cases (*Apple* and *Yelp*) have similar fact patterns.

This case is quite different. Herbert did not state in November that material problems with the PA Pilot existed back in May—he stated that issues with no defined impact "*started* to become evident maybe a little bit" *sometime* in the second quarter, a period of time which lasted 45 days past May 16.

**Former Employees.** The Opposition also points to allegations from four FEs as evidence that a material problem with the PA Pilot "must have" existed as of May

2023 and that Herbert "must have" known about it. (*See generally* Opp.Br.24-29.) But nothing in the FE statements supports that conclusion.[3]

Plaintiff emphasizes an allegation from a former "Senior Territory Manager," FE1, stating that she participated in a "Company conference call" "no later than the second quarter of 2023 in which CEO Herbert himself discussed the slowdown in prior authorizations." (¶55; Opp.Br.25-26.) But that general reference to "the second quarter" fails to show a material problem *as of May 16* for the same reason Herbert's November 7 "admission" fails to show a problem as of that date: the second quarter lasted 45 days *past* May 16.

The allegation is unduly vague in any event. FE1 only alleges that Herbert "discussed the slowdown in prior authorizations"; she does not allege that, in May, Herbert was already connecting that slowdown to the *PA Pilot*, or that the slowdown was having an impact on revenue. *See Trs. of Welfare & Pension Funds of Loc. 464A v. Medtronic PLC*, 2024 WL 1332262, at *8, 17, 30 (D. Minn. Mar. 28, 2024) (rejecting similarly vague "anecdotal" allegations from a "senior territory manager" of a large medical-device company).

---

[3] Plaintiff sourced "FE2's" allegations from an interview published on "AlphaSense Expert Insights." (¶¶41-45; *see generally* Opp.Br. (repeatedly citing a phase—"absolutely massive slowdown"—used by FE2).) Because Defendants were unable to locate this interview online, they asked Plaintiff to provide it, so that the Court could view the interview in context. Plaintiff refused, claiming the request constituted improper "early discovery." (Opp.Br.13 n.2.) The refusal suggests there is something in the interview that Plaintiff wishes the Court not to see. The Court should thus decline to consider the FE2 allegations.

Alternatively, Plaintiff contends, because the four FEs "consistent[ly]" allege the PA Pilot caused a "prior authorization slowdown" "early in the process" (*i.e.*, after January 2023), and because the FEs worked "in separate geographic areas across the country," the Court can *infer* the existence of a material "companywide problem" as of May 2023, even absent specific allegations to that effect. (Opp.Br.25, 28.)

Not so. For one, the FEs are not from "separate geographic areas": they all hail from one area, the Midwest. (*Compare* ¶39 n.1 (Chicago), ¶46 n.3 (Iowa), ¶50 n.4 (Wisconsin)[4] *with* Ex.13 at 1 (noting that Inspire has "274 U.S. sales territories").) Given how low-level the employees were—three Territory Managers and one Senior Territory Manager—their anecdotal experiences are not indicative of a *companywide* problem, much less one as of May 2023 specifically. (*See* Ex.20 at 24, 30-31 (org charts showing "Territory Managers" multiple levels below senior management).) Plaintiff's cited cases involved far more robust FE allegations than this. *See, e.g.*, *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 249, 262–63 (S.D.N.Y. 2023) (six FEs "span[ned] different levels of the Company hierarchy" and had "firsthand knowledge" of executive discussions); *In re Resideo Techs., Inc., Sec. Litig.*, 2021 WL 1195740, at *6 & n.5 (D. Minn. Mar. 30, 2021) (15 FEs "attest[ed] to the Defendants' knowledge of the relevant information").

Nor has Plaintiff pointed to any compelling "corroborating" facts supporting the FEs' allegations of "absolutely massive" problems with the PA Pilot starting "early in"

---

[4] The Complaint does not allege where FE2 worked.

6

2023. (¶¶44,55.) Indeed, the only "corroborating" fact Plaintiff cites is Herbert's November 7 statement. (Opp.Br.25.) The cases Plaintiff cites where courts credited similarly "low-level" FE allegations had far more corroboration than that. *See, e.g.*, *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at *1-3, 8-9 (D.N.J. Dec. 30, 2019) (FE allegations of an illegal scheme supported by an internal audit and multiple government lawsuits).

**JPMorgan "Loss" Estimate**. Plaintiff also emphasizes a November 2023 JPMorgan Chase analyst report estimating that the "slowdown in prior authorization submissions" that Inspire referenced on its Q3 earnings call "resulted in a $7-10M shortfall in the US business *relative to our own [Q3] expectations*," which the analyst equated to "nearly 400 procedures." (Ex.17 at 1.) From this slender reed, Plaintiff insinuates not only that the PA Pilot caused "hundreds of patients' submissions to be rejected outright by insurers or never submitted at all," but also that such "material" "losses" were known by Defendants as early as May 2023. (*See* Opp.Br.26, 31-32.)

This argument is doubly flawed. First, as Defendants previously explained, this report does not show that Inspire actually lost revenue or procedures as a result of the PA Pilot. (Opening.Br.11 n.4.) The report is based on hypothetical "losses" extrapolated from a *third-party analyst's* earnings goal—not a published Inspire target. Unlike the materiality cases cited in the Opposition (at 26-27 & n.5), Inspire has *never* conceded that the PA Pilot problems caused Inspire to lose *any* revenue or business, much less a material amount. *Cf., e.g.*, *In re Bear Stearns Cos., Inc. Sec. Litig.*, 763 F. Supp.

2d 423, 497-98, 521-22 (S.D.N.Y. 2011) ("qualitative" statements about "high-quality" "risk management programs" were "materially misleading" where corrective disclosure revealed that company had lost "billions" of dollars due to poor risk management). Not only that, but Inspire's post-Class Period performance shows the opposite: that, in 2023, Inspire *exceeded* the only revenue estimates *Inspire* provides, which are annual estimates. (Opening.Br.13-14.)[5]

Second, even if JPMorgan's lost-revenue estimate were given any credence, missing an earnings estimate for Q3 does not mean a material problem existed in Q2. Applying an analyst's estimate of a future loss retroactively, as Plaintiff does here, is simply another form of improper "fraud by hindsight" pleading. *See In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 231-32 (S.D.N.Y. 2021).

> **ii.    Regardless, Plaintiff fails to point to any actionable misrepresentation in the statements themselves.**

Threshold "fraud by hindsight" failure aside, the May statements also fail for individual reasons.

---

[5] Contrary to the Opposition (at 40-41), there is nothing impermissible about the Court considering Inspire's post-Class Period performance via judicially noticeable SEC filings. "[A]ny information that sheds light on whether class period statements were false or materially misleading is relevant," including "post-class-period data." *Public Pension Grp. v. KV Pharm. Co.*, 679 F.3d 972, 981 (8th Cir. 2012). Plaintiff's sole cited case (*Acticon*) concerns an irrelevant loss-causation issue.

### 1. The one statement that addresses the PA Pilot is nonactionable puffery.

Plaintiff identifies only one May statement that addressed the subject of the alleged fraud, *i.e.*, the PA Pilot. That is Herbert's May 16 statement that Inspire is "in the phase of teaching center[s] . . . to help them just kind of submit their own prior authorizations" and it's "been well received so far." (Ex.8 at 10-11.)

Notably, though, the Opposition essentially concedes that this statement is nonactionable puffery. (*Compare* Opening.Br.23-24 *with* Opp.Br.34.) The Opposition does not point to anything specifically false or misleading about the words Herbert used. Instead, Plaintiff suggests, "in context," the statement *could* be construed as providing false "comfort to analysts" about the PA Pilot's progression. (Opp.Br.34.)

But no reasonable investor could view the statement in that way. Herbert simply stated an undisputed fact—Inspire is "in the phase of teaching center[s] . . . to help them just kind of submit their own prior authorizations"—followed by a general statement of optimism—it's "been well received so far."

This is textbook corporate puffery. Unlike Plaintiff's cited cases, Herbert neither proclaimed the PA Pilot a success nor asserted that the Pilot had met any verifiable metrics. *Cf., e.g.*, *IBT Emp. Grp. Welfare Fund v. Compass Minls. Int'l, Inc.*, 706 F. Supp. 3d 1225, 1251 (D. Kan. 2023) (statement about a project being "on track" not puffery when accompanied by "very specific" language promising "$30 million in savings" that defendant allegedly knew at the time would not materialize).

9

### 2. The other May statements do not address the PA Pilot and are factually accurate in any event.

Plaintiff's arguments with respect to Herbert's four other May statements fare no better. Most notably, none addressed the PA Pilot. This matters because an "admission" is not evidence of an earlier "misstatement" if the admission did "not specifically mention" the subject of the earlier statement. *See, e.g.*, *Centene*, 407 F. Supp. 3d at 841 (dismissing claims on this basis); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *9-10 (N.D. Cal. Nov. 27, 2018) (same). Thus, Herbert's November admission that problems with the Pilot "started to become evident maybe a little bit in the second quarter" says nothing about whether earlier statements *not addressing the Pilot* were false or misleading when made. Because the Opposition cites no other basis to find the statements false or misleading, they are not actionable.

### a. May 2: *"See[ing] signs of improvement"* in *"reducing the"* *"approximately six month[]"* *"time from patient contact to implant."*

Plaintiff claims that this statement was false or misleading because Herbert "omitted the highly material fact" that the PA Pilot problems had allegedly "led to a 'massive slowdown' in the [prior authorization] process and hundreds of lost procedures." (Opp.Br.31.) But nothing in Herbert's statement addressed either prior authorization or the PA Pilot. (Ex.7 at 5.) Herbert thus had no duty to mention prior authorization "problems" allegedly caused by the Pilot. Any connection between the two topics is Plaintiff's own invention.

10

Nor does Plaintiff cite any specific facts suggesting that problems with the PA Pilot had any material effect on the "approximately six month[]" timeline Herbert referenced in this statement. (Opening.Br.25.) Even if Plaintiff need not "quantify the amount" that the PA Pilot problems "lengthened the average timeline for all patients" (Opp.Br.33), it must provide *some* particularized basis for challenging a statement's veracity. "Rhetorical flourishes" and "anecdotal evidence from a handful of employees" do not suffice. *In re Stratasys, Ltd.*, 2016 WL 3636992, at *11-12 (D. Minn. June 30, 2016), *aff'd*, 864 F.3d 879 (8th Cir. 2017).[6]

A particularized showing is particularly important with respect to this statement, moreover, because Inspire continued to recite this "six month" statistic *after* the November 7 "corrective disclosure," when the "truth" about the Pilot's effect on Inspire's business was "revealed." (Opening.Br.25; ¶62.) "[I]f a statement is revealed to be true—even following the Class Period—Plaintiff cannot prove that it was 'objectively false'" when made. *In re Allergan PLC Sec. Litig.*, 2022 WL 17584155, at *16 (S.D.N.Y. Dec. 12, 2022). The Opposition has no response to this point.

---

[6] Plaintiff's claim of "hundreds of lost procedures" does not help it. (Opp.Br.31.) First, the figure has no factual support. The only conceivable source is the irrelevant and retrospective JPMorgan report addressed *supra*. Second, the figure still does not suggest a change in the average time between patient contact and implant.

11

### b. May 2: *"Improv[ing] . . . conversion of contact to patients receiving therapy."*

The same logic applies to this statement. First, the statement references neither the PA Pilot nor prior authorizations more generally. Second, regardless of the exact "conversion" metric Herbert is referencing (*cf.* Opp.Br.30 (disputing Inspire's description)), Plaintiff cites no specific facts suggesting that problems with the PA Pilot caused that metric to "significantly deteriorate[]," such that Herbert's statement was false or materially misleading in May (*id.* 21). Indeed, just as with the prior statement, Inspire continued to describe its "conversion" rate as "improving" *after* the alleged "corrective disclosure"—including on the November 7 call itself. (*See* Ex.14 at 5 ("[W]e continued to improve our conversion of patients receiving Inspire therapy [in Q3] . . .").) It is implausible that a statement was false or misleading when made if Inspire repeated the statement in an indisputably "truth[ful]" disclosure. (¶62.) At the least, it shows there is no connection between the two subjects.

### c. May 2: *"Digital scheduling pilot"* led to a *"30% improvement in physician appointments . . ."*

Plaintiff all but concedes this statement's irrelevancy, relegating its defense to a footnote. (Opp.Br.23 n.4.) For good reason. The "digital scheduling pilot" has nothing to do with the PA Pilot. (Opening.Br.26-27.)

### d. May 16: *"Now we get approved in just 2 to 5 days…"*

As for this statement, Plaintiff asks the Court to simply *assume* that because some employees alleged that the PA Pilot had a "massive" effect on the "approval process,"

that *must* mean that Herbert's general statement that Inspire had gone from taking "4 to 6 months to get an insurance approval" to "just 2 to 5 days" was false or materially misleading. (Opp.Br.20, 31-32.) Again, anecdotal allegations, unmoored from concrete facts, are insufficient. *In re Stratasys*, 2016 WL 3636992, at *11-12.

Further, to the extent Plaintiff claims that this statement was misleading simply because Herbert failed to highlight the PA Pilot changes to prior authorization when discussing "insurance approval" trends more generally (Opp.Br.31), that argument also fails. There is no duty to discuss a specific program every time an executive discusses a subject generally related to that program. *See Medtronic*, 2024 WL 1332262, at *14 (no duty to disclose "product concerns" when making a "truthful[]" statement about product revenue more generally).

### B. Because the August 1 and September 6 Statements Do Not Address the PA Pilot and Are Factually Accurate, They Are Not Actionable Either.

This leaves just three statements that occurred *after* July 1, 2023, *i.e.*, after Inspire allegedly received "strong confirmation" of issues with the PA Pilot. (Ex.14 at 5, 8.) Two statements were made by Herbert on Inspire's August 2, 2023 Q2 earnings call, and one statement was made by Buchholz at a September 6, 2023 Wells Fargo Healthcare Conference. (¶¶78-85; Opening.Br.29-31.)

The timing of these statements does not matter, however, because Defendants did not address prior authorization generally—much less the PA Pilot specifically—in either statement. Defendants thus had no duty to disclose issues with the PA Pilot. *See*

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011) ("Companies can control what they have to disclose . . . by controlling what they say to the market."). And Plaintiff does not cite anything else false or materially misleading about the statements.

### i.   August 1: *"Improv[ing] . . . conversion of contact to patients receiving therapy."*

This statement was not false or misleading for the same reasons Herbert's materially identical May 2 statement was not false or misleading: (1) it does not reference the PA Pilot, (2) Inspire continued to use this language even after the November 7 "corrective disclosure," and (3) no specific facts are alleged indicating the metric had materially worsened due to the PA Pilot.

### ii.   August 1: *"I think we're seeing continued growth across all of our centers."*

Plaintiff contends that this statement was false or misleading because Inspire was allegedly *not* "seeing continued growth" "at that moment in time," *i.e.*, part-way through Q3 2023. (Opp.Br.33.) Even assuming generic statements about "continued growth" are actionable, *but see W. Palm Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651-52 (N.D. Ill. 2020), Plaintiff fails to point to specific facts explaining what was misleading about Herbert's use of that phrase here. Inspire grew 40% year-over-year from Q3 2022 to Q3 2023, earned more revenue in Q3 2023 than in Q2 2023, and beat the 2023 annual revenue guidance it issued in Q3 by over $12 million. (Opening.Br.14, 30-31; *see also* Ex.9 at 6 ($151 million in Q2 2023), Ex.12 at 6 ($153 million in Q3 2023).) Objectively, then, Inspire *was* experiencing "continued growth"

in Q3 2023, PA Pilot issues notwithstanding. *See In re Stratasys,* 2016 WL 3636992, at

*11 ("Compounding plaintiffs' problem is the fact that, in contrast to many securities-

fraud actions, defendants' financial predictions were actually fairly accurate."). The

Opposition has no response to this point.

Plaintiff's cited cases do not help it either. (Opp.Br.35.) There, executives made

overly rosy statements about their company's "growth rates" or "pricing pressures,"

when they knew such optimism was unwarranted. *See, e.g., In re St. Jude Med., Inc. Sec.

Litig.,* 836 F. Supp. 2d 878, 884-85, 891 (D. Minn. 2011) (statement that "growth rate[s]

would be maintained" was misleading because company was engaged in unsustainable

channel stuffing and improper accounting). No such contradiction existed here.

### iii.   September 6: *"We have a robust pipeline of patients awaiting therapy."*

Buchholz's September 6 statement is not actionable for the same reason.[7] Even

if the word "robust" were actionable, *but see* Opening.Br.31, all available evidence

indicates that Inspire's "pipeline of patients awaiting therapy" mid-way through Q3

2023 *was* "robust." Plaintiff's only response is to cite cases where a company used a

word like "robust" when such optimistic rhetoric was wholly disconnected from the

internal reality. *See, e.g., In re MF Glob. Holdings Ltd. Sec. Litig.,* 982 F. Supp. 2d 277, 289,

317 (S.D.N.Y. 2013) (description of "internal [liquidity] controls" as "robust" materially

---

[7] Plaintiff does not dispute that, if the Court finds this statement inactionable, then all
claims against Buchholz must be dismissed. (Opening.Br.43.)

misleading where company's auditor "issued several reports during the Class Period that . . . noted failures to follow [liquidity] policies," resulting in a billion-dollar collapse). That is simply not this case: Inspire experienced "robust" growth in 2023 and ultimately beat its annual revenue guidance by over $12 million. *See In re Stratasys*, 2016 WL 3636992, at *11.

## II.   Plaintiff's Minimal Scienter Arguments Are Unpersuasive.

Plaintiff has no motive allegations. (Opp.Br.50-52.)[8] Thus, its scienter allegations must be "particularly strong" to survive a motion to dismiss. (Opening.Br.33.) Because Plaintiff's allegations are not "particularly strong"—if anything, they're unusually weak—scienter is an independent basis for dismissal.

### A.  Herbert Never "Admitted" To Making Contradictory Statements.

Plaintiff first claims that Herbert's November 7 "admission" "indisputably" shows that Defendants "made statements when they knew or had access to information suggesting [those] public statements [were] materially inaccurate." (Opp.Br.42-44.)

No, it does not. Nothing in the November 7 statement suggests that Defendants knew that the PA Pilot was causing material problems as of May 2023—when most of

---

[8] Plaintiff weakly suggests that Defendants' alleged desire to "buy time" for the PA Pilot to improve presents an actionable motive. (Opp.Br.51.) But Plaintiff fails to explain how Defendants personally *benefited* from such delay—Plaintiff does not identify any financial benefit received in Q2, for example, that would not have been received but for the alleged fraud. *Cf., e.g., Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 661-62 (8th Cir. 2001) (deferred disclosure was "time[d]" to protect executive's "compensation package").

16

the allegedly "misleading" statements were made. *See In re Stratasys*, 2016 WL 3636992, at *12 (plaintiff failed to allege exactly when defendants knew problems with key product would materially affect financial results); *supra* § I.A. Indeed, Plaintiff tacitly concedes this point. (*See* Opp.Br.44 (focusing on the "August 1" and "September 6" statements).)[9]

As for the August and September statements, Plaintiff again fails to appreciate that, because Defendants did not say anything about the PA Pilot in those statements, Defendants had no duty to disclose "problems" with the Pilot when making the statements. *Supra* § I.B. Unlike Plaintiff's cited cases, then, there was no contradiction between Defendants' public statements and Defendants' private knowledge. *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 727 (D. Minn. 2019) (defendants affirmed that "they would never place an order for services without . . . customer[] authorization" when detailed insider and regulatory allegations showed defendants knew "employees frequently" did that). That leaves Plaintiff with a "pure

---

[9] Plaintiff claims Defendants may have known about the problems earlier than Q3 because they allegedly "track[ed] the results of the" PA Pilot "in real time," "from early in the process." (Opp.Br.42-43.) But the statement Plaintiff cites does not support that inference. All Herbert said was that "with tracking of the data, we really didn't take action until early in the third quarter when we had strong confirmation of that." (Ex.14 at 8.) This is nothing like *In re Acadia Pharms., Inc., Sec. Litig.*, where the defendants "d[id] not dispute" tracking data that "clearly showed red flags" at the time of the allegedly misleading statement. 2020 WL 2838686, at *8 (S.D. Cal. June 1, 2020).

17

omission" claim, which the Supreme Court has rejected. *See Macquarie Infrastructure Corp. v. Moab Partners, LP*, 601 U.S. 257 (2024).[10]

More still, the notion that Defendants acted fraudulently simply by failing to *sua sponte* disclose issues with a pilot program when answering analyst questions about general business topics fails to meet the high standard for pleading securities fraud. *See Apogee*, 2020 WL 1445856, at *11, 13 (a misstatement must have been "highly unreasonable" and an "extreme departure from the standards of ordinary care").

**B. The FE Allegations Do Not Speak to Defendants' State of Mind.**

Plaintiff spends only a paragraph trying to defend its FE allegations of scienter. (Opp.Br.45-46.) For good reason: they are vague, speculative, and say nothing about *Defendants' knowledge* of material problems with the PA Pilot *at the time of* the allegedly misleading statements. *See supra* at 4-7. The one case Plaintiff cites only confirms the allegations' inadequacy. *See Beaver Cty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1042-44, 1052-53 (D. Minn. 2015) (FEs specifically alleged that CEO knew of undisclosed conflict of interest concerning his own brother-in-law, allegations supported by a short-seller report and company's own disclosures).

---

[10] *In re Nielsen* is distinguishable because it predates *Macquarie* and concerned a "pure omission" claim under Item 303. Thus, there was no "misleading" public statement against which to compare defendants' private knowledge. 510 F. Supp. 3d at 226-28.

**C. The Analyst Reports Support Defendants, Not Plaintiff.**

As for the analyst reports, they simply do not "interpret" Herbert's November 7 statement as an "admission" that the Company had "obviously been aware of" a material problem in Q2 and fraudulently failed to disclose it. (Opp.Br.50.) On the contrary, the reports support the conclusion that seasonal variation in Medicare versus commercial revenues masked the Pilot's initial effects in Q2, that Defendants began fixing the problem once confirmed in Q3, and that, out of an abundance of caution, Defendants then disclosed the issue at the end of Q3. (*See, e.g.*, Ex. 18 at 1 (Truist: "During 2Q mgmt. had noticed a mix shift towards Medicare vs. private pay and wasn't entirely sure of the cause (this was called out on the Q2 call)"; adding that any prior authorization slowdown was an "*unintended* consequence" of the PA Pilot); *see also* Opening.Br.38-39.)[11]

Plaintiff's cited cases, by contrast, are irrelevant (*SeaWorld*), involved analysts confirming that an admitted false statement was also material (*Pluralsight*), or involved the defendants misleading analysts (*Salix*).

**D. The "Core Operations" Doctrine Is Inapplicable and Insufficient.**

With no specific evidence of scienter, Plaintiff falls back on the more general contention that because Inspire's prior authorization support efforts were allegedly a

---

[11] Truist's comments also support Defendants' point that Inspire initially "lost visibility" into pilot center submissions, thus preventing it from confirming any material issue. (Opening.Br.11-12, 37.) That temporary loss of detailed insight—a natural consequence of trying something new—is not "severe recklessness." (Opp.Br.53.)

19

"core" part of its business, the Court can *infer* that Defendants were "closely tracking" the PA Pilot and thus knew about material problems from "early on." (Opp.Br.46-49.)

This argument fails twice over. First, prior authorization support, while important, was not a "core" element of Inspire's business, such that real-time executive knowledge of PA Pilot problems can be assumed. True, Plaintiff cites two instances where Inspire referenced its "market access team"—*i.e.*, the team tasked with "assist[ing] patients and physicians in obtaining prior authorization approvals"—in its 2023 10-K. (Ex.3 at 7-8, 19.) But these statements show that this team was small (a "subset of our 25-person reimbursement team") and simply a helpful component of Inspire's "reimbursement strategy." (*See, e.g.*, *id.* at 19 ("A second pillar of our reimbursement strategy includes leveraging our market access team . . ."), *id.* at 8 (listing "market access team" efforts to "secure prior authorization" "when required" among several paragraphs' worth of "competitive strengths").) These statements do not show that Inspire's business rose and fell on whether the PA Pilot succeeded. *Cf., e.g.*, *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495, 527-28 (D. Md. 2022) (because the "development of [a] vaccine was so critical to [the defendant's] success," executives were presumably immediately aware of delay in regulatory approval).

Second, even if the core-operations doctrine were relevant, it cannot single-handedly cure all the other deficiencies with Plaintiff's scienter allegations highlighted above. (*See* Opening.Br.34-35.) Plaintiff's cited cases confirm as much. Each case involved far more detailed and damning scienter allegations than Plaintiff offers here;

20

the core-operations doctrine was thus icing on a cake already frosted. *See, e.g., Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 815-22 (D. Minn. 2022) (scienter supported by insider-trading allegations, specific executive presentations, and compliance warnings); *CenturyLink*, 403 F. Supp. 3d at 730-35 (detailed allegations from 20 FEs, multiple government and internal investigations, firing of whistleblowers, and executive resignations). No such strong base exists here.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: October 11, 2024

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Jeffrey P. Justman*
Matthew Kilby (#0335083)
Jeffrey P. Justman (#390413)
Kacie Phillips Tawfic (#0399980)
Anderson C. Tuggle (#0400277)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
matthew.kilby@faegredrinker.com
jeff.justman@faegredrinker.com
kacie.tawfic@faegredrinker.com
anderson.tuggle@faegredrinker.com

Sandra D. Grannum (*pro hac vice*)
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com

*Attorneys for Defendants*

21